IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

United States of America ex rel. Donna Rauch,      )
Muriel Calhoun, and Brandy Knight,                 )
                                                   ) Case No.: 6:15-cv-01589-JD-JDA
Plaintiffs,                                        )
                                                   )
v.                                                 )
                                                   )
Oaktree Medical Centre, P.C., et. al.,             )
                                                   )

**STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL**

WHEREAS, this Stipulation and Order of Settlement and Dismissal (Stipulation) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) and the Defense Health Agency (DHA), acting on behalf of the TRICARE Program (collectively, the United States), Defendant Daniel A. McCollum (McCollum), and Relators Donna Rauch, Muriel Calhoun, Brandy Knight, and Robert Mathewson (Relators), (hereafter collectively referred to as the Parties), through their authorized representatives;

WHEREAS, McCollum is a chiropractor who owned and/or operated pain management clinics in South Carolina, North Carolina, and Tennessee that operated under various names and corporate legal structures including: Oaktree Medical Centre (Oaktree), Pain Management Associates of the Carolinas (PMA of Carolinas), Pain Management Associates of North Carolina (PMA of North Carolina), and FirstChoice Healthcare (FirstChoice). Collectively, McCollum's clinics did business as Pain Management Associates (PMA). McCollum also owned and/or operated urine drug testing (UDT) laboratories in South Carolina: Oaktree, Labsource LLC (Labsource), and ProLab LLC (ProLab). McCollum also owned and operated a pharmacy in South Carolina called Exigo Pharmaceuticals, LLC. McCollum's pain management clinics, laboratories,

and pharmacy billed and/or caused to be billed to federal healthcare programs various services, including UDT, pain injections, prescription lidocaine ointments, and opioid prescriptions.

WHEREAS, on April 10, 2015, Donna Rauch, Muriel Calhoun, and Brandy Knight filed a *qui tam* complaint pursuant to the *qui tam* provisions of the False Claims Act (FCA), 31 U.S.C. § 3730(b), against McCollum and others captioned *United States ex rel. Rauch v. Oaktree Medical Centre, P.C.*, No. 6:15-cv-1589 (D.S.C.) (the Rauch Civil Action).

WHEREAS, on May 5, 2017, Karen Mathewson filed a *qui tam* complaint pursuant to the FCA's *qui tam* provisions, 31 U.S.C. § 3730(b), against McCollum and others captioned *United States ex rel. Mathewson v. McCollum*, No. 6:17-cv-1190 (D.S.C.) (the Mathewson Civil Action). On June 19, 2019, Robert Mathewson was substituted for Karen Mathewson as the relator in the Mathewson Civil Action pursuant to Federal Rule of Civil Procedure 25(a)(1).

WHEREAS, on March 1, 2019, the United States intervened in the claims in the Rauch Civil Action alleging that McCollum, Oaktree, Labsource, PMA of North Carolina, ProCare Counseling Center, LLC, ProLab, and FirstChoice provided and/or received illegal remuneration that was tied to or resulted in the improper referral of UDT and billed or caused to be billed to federal healthcare programs claims for UDT that was not medically necessary or not performed; the United States declined to intervene in the remaining claims in the Rauch Civil Action and declined to intervene as to the other named defendants;

WHEREAS, on March 1, 2019, the United States intervened in the claims in the Mathewson Civil Action alleging that McCollum, Oaktree, FirstChoice, and PMA of the Carolinas provided and/or received illegal remuneration that was tied to or resulted in the improper referral of UDT, billed or caused to be billed to federal healthcare programs claims for UDT that were not medically necessary, and billed or caused to be billed to federal healthcare programs claims for prescription lidocaine ointments that lacked a legitimate medical purpose; the United States

2

declined to intervene in the remaining claims in the Mathewson Civil Action and declined to intervene as to the other named defendants;

WHEREAS, on May 31, 2019, the United States filed its Complaint against McCollum and other defendants;

WHEREAS, the United States contends that McCollum caused false claims to be submitted for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll (Medicare); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 (Medicaid); and the TRICARE Program, 10 U.S.C. §§ 1071-1110b (TRICARE);

WHEREAS, the United States contends that it has certain civil claims against McCollum arising from his causing the submission, or conspiring to submit or cause the submission, of false claims, and/or false statements or records material to those claims, to Medicare, Medicaid, and TRICARE from January 1, 2011, through December 31, 2018, by (1) providing illegal remuneration that was tied to the referral of UDT in violation of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b; (2) violating the physician self-referral law, 42 U.S.C. § 1395nn (commonly referred to as the "Stark Law") by causing the submission of claims to the Medicare program for UDT furnished pursuant to prohibited referrals from physicians with whom McCollum had financial relationships and that did not satisfy the requirements of any applicable exception to the Stark Law; (3) causing claims to be billed to federal healthcare programs for UDT that were not medically necessary and/or not performed; and (4) causing claims to be billed to federal healthcare programs for medically unnecessary steroid pain injections, and for prescription medications that lacked a legitimate medical purpose as alleged in the United States' Complaint and referred to herein as the "Covered Conduct";

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable resolution addressing the claims asserted against McCollum arising from the Covered Conduct;

WHEREAS, Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds from the settlement between the Parties and to Relators' reasonable expenses, attorneys' fees and costs;

NOW, THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

### TERMS AND CONDITIONS

1.      The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2.      McCollum does not contest and therefore accepts responsibility for the following conduct:

a.      From at least in or about January 2014, and continuing thereafter until the spring of 2019, in the District of South Carolina and elsewhere, McCollum and others knowingly and willfully did combine, conspire, confederate, agree and have a tacit understanding with each other to: 1) violate the AKS, 42 U.S.C. § 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part by federal healthcare programs Medicare, Medicaid, and TRICARE; and 2) violate the FCA, 31 U.S.C. § 3729 *et seq.*, by knowingly presenting and/or causing to be presented materially false and fraudulent claims for payment or approval to the Medicare, Medicaid, and TRICARE programs that were not reasonable and necessary for the diagnosis or treatment of individual patients and that lacked a legitimate medical purpose.

b.      McCollum owned, operated, directed, or had a financial interest in a network of pain management clinics, UDT laboratories, and other businesses related to pain

management.  McCollum's businesses included Oaktree, Labsource, PMA of the Carolinas, Exigo, and Coffey Family Medical Center (Coffey) (collectively, the McCollum entities).

        c.      Labsource, at McCollum's direction, utilized kickbacks in the form of a direct bill program as a means to grow its business.

        d.      Under the direct bill program (sometimes referred to as the "client bill" program), Labsource gave referring providers an opportunity to earn revenue generated from their commercially-insured UDT referrals as an inducement for those providers to refer all of their federally-insured UDT patients, specifically including testing for Medicare, Medicaid, and TRICARE beneficiaries, to Labsource.

        e.      Labsource's direct bill program functioned as follows:  (i) a participating provider (either an individual physician or a clinic) would execute a direct bill agreement with Labsource; (ii) a participating provider would then pay Labsource a modest negotiated fee (typically between $200 and $250) for each commercially-insured UDT order referred to Labsource; (iii) Labsource, in turn, would permit the provider to stand in Labsource's shoes and bill the commercial insurer for the UDT performed by Labsource, and retain as profit the difference between the commercial insurance reimbursement and the negotiated fee paid to Labsource; (iv) however, Labsource would bill and retain all of the revenue generated by Medicare, Medicaid, and TRICARE.

        f.      By permitting and encouraging the provider to bill the commercial insurer for the UDT, Labsource, in essence, paid a kickback to the provider to induce the referral of the provider's Medicare, Medicaid and TRICARE UDT.

        g.      Further, McCollum and others devised a scheme to generate revenue from insurance reimbursement associated with lidocaine cream. He and others utilized individuals

5

without prescriptive privileges to order lidocaine cream for patients—often without the knowledge or approval of the patients' healthcare providers.

h.    To further drive lidocaine prescriptions, McCollum and others directed employees of the McCollum entities to review patient records for payor information to determine which insurance providers would pay for the lidocaine cream.  Based on this analysis, McCollum entity providers began receiving daily memoranda indicating which patients had appointments that day and whether or not their insurance would cover the lidocaine cream.  McCollum and others encouraged providers at the McCollum entities to prescribe lidocaine cream for all patients with qualifying insurance, including Medicare, Medicaid, and TRICARE, regardless of medical necessity.

i.    In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the District of South Carolina and elsewhere:  (i) on or about January 12, 2018, McCollum sent an email entitled "Lidocaine Missed Prescriptions" to providers at the McCollum entities; (ii) on or about January 22, 2018, McCollum sent an email to two individuals, referred to here as "DR" and "MB," about lidocaine inventory; (iii) in or about August 2014, McCollum attended a training session for direct billing sales and marketing.

j.    With respect to the numbered paragraphs 2(a) through 2(i), McCollum admits and acknowledges that the conduct described in these paragraphs constitutes misrepresentations, fraudulent omissions and/or deceptive conduct; McCollum does not contest that he and others knew this conduct was false and/or deceptive; McCollum and others engaged in this conduct with an intent to deceive the United States and cause the United States to pay false or fraudulent federal healthcare program claims; the United States justifiably relied on this conduct in paying those claims; this reliance proximately caused damage to the United States; McCollum

and others took each of the actions constituting the conduct with the subjective intent to cause harm to the United States and/or the subjective knowledge that harm to the United States was certain to occur; and the conduct was wrongful, done intentionally, injurious to the United States, and taken without just cause and excuse.  McCollum admits that this conduct violates 31 U.S.C. § 3729(a)(1)(C).  That is, McCollum admits that he and his co-conspirators entered into conspiracies to present or cause to be presented false or fraudulent claims for payment or approval to the Medicare, Medicaid, and TRICARE programs—and to make, use, and cause to be made or used false records or statements in support of those claims—and performed acts in furtherance of these conspiracies.

3.    McCollum shall pay to the United States the sums specified in this Paragraph (collectively, the Settlement Amount), under the terms and conditions specified herein, by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice.

a.    McCollum shall pay to the United States within ten (10) calendar days of the Effective Date the sum of Thirty-Five Thousand Dollars ($35,000.00) (Initial Payment).

b.    McCollum shall pay to the United States the sum of Eighty-Five Thousand Dollars ($85,000.00), plus simple interest at one and a half percent (1.5%) per annum, calculated daily, from the Effective Date and continuing until and including the day of payment, pursuant to the payment schedule attached as Exhibit A (each a "Payment Over Time" and collectively the "Payments Over Time").  The Payments Over Time may be prepaid, in whole or in part, without penalty or premium.

c.    First Contingency: For each period of three hundred sixty-five (365) calendar days in the five (5) years following the Effective Date of this Stipulation (each an "Annual Contingency Period" and collectively, "Total Contingency Period"), within ten (10) calendar days

7

following the end of an Annual Contingency Period, McCollum shall e-mail the undersigned counsel for the United States (or anyone else they identify to receive service) a written summary (Annual Report), including a signed certification confirming the accuracy of its contents subject to 18 U.S.C. §1001, in the form of Exhibit B attached hereto, and detailing: 1) the fair market value of each payment, earnings, bonus, commission, raise, distribution, gift, return of capital, tax refund, sales proceeds, reimbursement, refund, loan proceeds, insurance payment, damages, penalties, gambling or lottery winnings, restitution, capital gains, transfer, or other form of remuneration that McCollum received that year from any person, company (including but not limited to Carolina Spine and Pain Centers, Inc. or any affiliate or successor), investment, litigation, claim, or other source (collectively, Total Annual Earnings); 2) McCollum's salary for that year, if any, from Carolina Spine and Pain Centers, Inc.; and 3) a calculation of the amount due to the United States under this Paragraph. As to the latter, if, for any year during the Total Contingency Period, the fair market value of McCollum's Total Annual Earnings was at least Two Hundred Thousand Dollars ($200,000.00), McCollum shall pay to the United States within twenty (20) calendar days following the end of that year a sum equal to: (i) fifteen percent (15%) of the fair market value of McCollum's Total Annual Earnings between Two Hundred Thousand Dollars ($200,000.00) and Three Hundred Fifty Thousand Dollars ($350,000.00); plus (ii) thirty percent (30%) of the fair market value of McCollum's Total Annual Earnings between Three Hundred Fifty Thousand Dollars ($350,000.00) and Five Hundred Thousand Dollars ($500,000.00), if any; plus (iii) fifty percent (50%) of the fair market value of McCollum's Annual Earnings in excess of Five Hundred Thousand Dollars ($500,000.00), if any.

        d.     Second Contingency: Within three (3) calendar days of the Effective Date of this Stipulation, McCollum shall (i) effect the cancellation of the $2.76 million equity line note provided from Grove 1005, LLC; (ii) facilitate the removal and release of Grove 1005, LLC's

mortage on the 115 Brushy Creek property located in Easley, SC and (iii) grant the United States a security interest and lien in the amount of Three Million Dollars ($3,000,000.00) on the 115 Brushy Creek property. During the Total Contingency Period, McCollum agrees to effect the sale of the 115 Brushy Creek property in an arm's length transaction using his best efforts to sell the property at the maximum price. Upon the sale of 115 Brushy Creek property, McCollum shall pay to the United States, within ten (10) calendar days after that property sale closing, eighty percent (80%) of the total sales price less any federal, state, and local taxes or fees, and real estate commissions and any remaining balance on the 115 Brushy Creek mortgage owed to Brick & Mortar Funding, LLC.

e.  Third Contingency: If McCollum sells his residence at 435 Providence Way, Easley, SC during the Total Contingency Period, McCollum shall pay to the United States within ten (10) calendar days after the closing forty percent (40%) of the total sales price less any federal, state, and local taxes or fees, and real estate commissions and any remaining balance on the mortgage owed to Axiom Bank. If McCollum sells the 435 Providence Way property during the Total Contingency Period, the sale shall be in an arm's length transaction using his best efforts to sell the property at the maximum price.

f.  For purposes of the Second and Third Contingencies described in subparagraphs 3(d) and 3(e), best efforts shall include, but not be limited to, continuously listing the property for sale at a price recommended by a licensed real estate broker and, if necessary, reducing the listing price of the property at least quarterly in an amount that is deemed by a licensed real estate broker to be reasonably necessary to sell the property. The real estate broker(s) selected for the listing(s) and sale of the 115 Brushy Creek and 435 Providence Way properties shall be jointly selected by McCollum and the undersigned counsel for the United States (or anyone else they identify to serve in this role).

g.      With respect to the 115 Brushy Creek and 435 Providence Way properties, McCollum represents, warrants, and agrees that between July 13, 2021 and the date of sale of such property, McCollum (i) shall not encumber the property in any way, including but not limited to any mortgages, lines of credit, or other debts or liens, other than those identified in the Financial Disclosures (defined in Paragraph 11 below); (ii) shall keep and maintain the property in good condition and repair; and (iii) shall maintain on the property the same insurance coverage levels identified in the Financial Disclosures.  Until the sale of such property, McCollum shall e-mail the undersigned counsel for the United States (or anyone else they identify to receive service) quarterly signed written certifications and reports specifying the status of the efforts to sell each property, the name and current contact information for the real estate broker, the number of offers received, the terms of any such offers, and the reasons that any such offers were not accepted.

h.      All payments made by McCollum under subparagraphs 3(a)–(e) are restitution to the United States.

4.      McCollum shall execute and agree to the entry of a consent judgment in favor of the United States and against McCollum in the amount of Nine Million Dollars ($9,000,000.00), a copy of which is attached hereto as Exhibit C (McCollum Consent Judgment). The United States may use the McCollum Consent Judgment to obtain a security interest in any asset or property of McCollum, but shall not engage in other collection activity with respect to the McCollum Consent Judgment so long as McCollum fully complies with the terms of this Stipulation.  Should McCollum comply fully with the payment terms in Paragraph 3 above and the other terms of this Stipulation, the McCollum Consent Judgment shall be deemed to be satisfied in full.

5.      The terms of any payments by McCollum to Relators or their counsel for expenses and attorneys' fees and costs due under 31 U.S.C. § 3730(d) shall be made in accordance with a separate agreement between McCollum, Relators, and their counsel.

6.      Subject to the exceptions in Paragraph 8 (concerning reserved claims) below, and subject to Paragraph 11 (concerning disclosure of assets), Paragraph 20 (concerning default), and Paragraph 21 (concerning bankruptcy) below, and conditioned on McCollum's full compliance with the terms of this Stipulation, including full and timely payments to the United States of the Settlement Amount pursuant to Paragraph 3 above, the United States releases McCollum from any civil or administrative monetary claim the United States has for the Covered Conduct under the FCA, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the civil monetary provisions of the Stark Law at 42 U.S.C. §§ 1395nn(g)(3) and (g)(4), or the common law theories of payment by mistake, unjust enrichment, and fraud.

7.      Subject to the exceptions in Paragraph 5 (concerning attorneys' fees, costs, and expenses), Paragraph 8 (concerning reserved claims) below, and subject to Paragraph 11 (concerning disclosure of assets), Paragraph 20 (concerning default), and Paragraph 21 (concerning bankruptcy) below, and upon the United States' receipt of the Settlement Amount pursuant to Paragraph 3 above, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release McCollum from any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct under the FCA, 31 U.S.C. §§ 3729-3733.

8.      Notwithstanding the releases given in Paragraph 6 of this Stipulation, or any other term of this Stipulation, the following claims and rights of the United States are specifically reserved and are not released:

    a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.      Any criminal liability;

11

    c.      Except as explicitly stated in this Stipulation, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal healthcare programs;

    d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.      Any liability based upon obligations created by this Stipulation; and

    f.      Any liability of individuals who are not party to this Stipulation.

9.      Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Stipulation but agree and confirm that this Stipulation is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). In connection with this Stipulation and the Rauch Civil Action and Mathewson Civil Action (collectively, the Civil Actions), Relators and their heirs, successors, attorneys, agents, and assigns agree that neither this Stipulation, nor any dismissal of one or more of the Civil Actions, shall waive or otherwise affect the ability of the United States to contend that provisions in the FCA, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar one or more Relators from sharing in the proceeds of this Stipulation. Moreover, the United States and Relators and their heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the FCA on the issue of the share percentage, if any, that one or more Relators should receive of any proceeds of the settlement of their claim(s), and that the United States and Relators have not reached any agreement to date concerning Relators' share.

10.    Subject to Paragraph 5 (concerning attorneys' fees, costs, and expenses), Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release McCollum from any liability to Relators arising from the filing of the Civil Actions.

11.     McCollum has provided sworn financial disclosures and supporting documents (collectively, Financial Disclosures) to the United States, and the United States has relied on the accuracy and completeness of those Financial Disclosures in reaching this Stipulation. McCollum warrants that such Financial Disclosures are complete, accurate, and current as of the Effective Date of this Stipulation.  If the United States learns of asset(s) in which McCollum had an interest of any kind as of the Effective Date of this Stipulation (including, but not limited to, promises by insurers or other third parties to satisfy McCollum's obligations under this Stipulation)  that were not disclosed in such Financial Disclosures, or if the United States learns of any false statement or misrepresentation by McCollum on, or in connection with, such Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in such Financial Disclosures by Ten Thousand Dollars ($10,000.00) or more, the United States may at its option:  (a) rescind this Stipulation and reinstate its suit or file suit based on the Covered Conduct or (b) collect the full Settlement Amount in accordance with the Stipulation plus one hundred percent (100%) of the net value of McCollum's previously undisclosed assets.  McCollum agrees not to contest any collection action undertaken by the United States pursuant to this provision, and agrees that he will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action.  In the event that the United States, pursuant to this Paragraph rescinds this Stipulation, McCollum waives and agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to McCollum that this Stipulation has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on May 31, 2019.

12.     McCollum waives and shall not assert any defenses McCollum may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

13.     McCollum fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that McCollum has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

14.     McCollum fully and finally releases the Relators from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that McCollum has asserted, could have asserted, or may assert in the future against the Relators, related to the Rauch and Mathewson Civil Actions and the Relators' investigation and prosecution thereof.

15.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE, or any state payer, related to the Covered Conduct; and McCollum agrees not to resubmit to any Medicare contractor, TRICARE, or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

16.     McCollum agrees to the following:

a.      <u>Unallowable Costs Defined</u>:    All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security

14

Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of McCollum or his present or former agents in connection with:

(1)     the matters covered by this Stipulation and any related plea agreement;

(2)     the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Stipulation;

(3)     McCollum's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Stipulation (including attorneys' fees);

(4)     the negotiation and performance of this Stipulation and any plea agreement; and

(5)     the payment McCollum makes to the United States pursuant to this Stipulation and any payments that McCollum may make to Relators, including costs and attorneys' fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs:  Unallowable Costs shall be separately determined and accounted for by McCollum, and McCollum shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by McCollum or any of his companies, subsidiaries, or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

15

c.    **Treatment of Unallowable Costs Previously Submitted for Payment**:

McCollum further agrees that within 90 days of the Effective Date of this Stipulation he shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by McCollum or any of his companies, subsidiaries, or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. McCollum agrees that the United States, at a minimum, shall be entitled to recoup from McCollum any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by McCollum or any of his companies, subsidiaries, or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on McCollum or any of his companies, subsidiaries, or affiliates' cost reports, cost statements, or information reports.

d.    Nothing in this Stipulation shall constitute a waiver of the rights of the United States to audit, examine, or re-examine McCollum's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.    McCollum agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Stipulation. Upon reasonable notice,

McCollum agrees to make himself available for interviews and testimony. McCollum further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in his possession, custody, or control concerning any investigation of the Covered Conduct that he has undertaken, or that has been performed by another on his behalf.

18.     This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 19 (waiver for beneficiaries), below.

19.     McCollum agrees that he waives and shall not seek payment for any of the healthcare billings covered by this Stipulation from any healthcare beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

20.     The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct due solely to McCollum's financial condition as reflected in the Financial Disclosures referenced in Paragraph 11 above.

a.     McCollum shall be in default of this Stipulation if he fails to make the required payments set forth in Paragraph 3 above on or before the due date for such payments, or if he fails to comply materially with any other term of this Stipulation (Default). The United States will provide a written Notice of Default, and McCollum shall have an opportunity to cure such Default within ten (10) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under this Stipulation up to the date of payment. Notice of Default will be delivered to McCollum, or to such other representative as McCollum shall designate in advance in writing. If McCollum fails to cure the Default within ten (10) calendar days of receiving the Notice of Default and in the absence of

an agreement with the United States to a modified payment schedule (Uncured Default), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of twelve percent (12%) per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b.      In the event of Uncured Default, McCollum agrees that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Stipulation and pursue the United States' Complaint or bring any civil and/or administrative claim, action, or proceeding against McCollum for the claims that would otherwise be covered by the releases provided in Paragraphs 6 and 7 above with any recovery reduced by the amount of any payments previously made by McCollum to the United States under this Stipulation; (ii) take any action to enforce this Stipulation in a new action or by reinstating the United States' Complaint; (iii) offset the remaining unpaid balance from any amounts due and owing to McCollum and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. McCollum shall not contest any offset imposed or any collection undertaken by the United States pursuant to this Paragraph, either administratively or in any Federal or State court. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, McCollum agrees immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Stipulation pursuant to this Paragraph, McCollum waives and agrees not to plead, argue, or otherwise raise any defenses of

statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against McCollum within one hundred twenty (120) days of written notification that this Stipulation has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on May 31, 2019.

c.     In the event of Uncured Default, OIG-HHS may exclude McCollum from participating in all Federal healthcare programs until McCollum pays the Settlement Amount, with interest, as set forth above (Exclusion for Default).  OIG-HHS will provide written notice of any such exclusion to McCollum.  McCollum waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court.  Reinstatement to program participation is not automatic.  If at the end of the period of exclusion, McCollum wishes to apply for reinstatement, he must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. McCollum will not be reinstated unless and until OIG-HHS approves such request for reinstatement.  The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Stipulation or otherwise available.

21.     In exchange for valuable consideration provided in this Stipulation, McCollum acknowledges the following:

a.      McCollum has reviewed his financial situation and warrants that he is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

b.     In evaluating whether to execute this Stipulation, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to McCollum, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties

conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

      c.     The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

      d.     The Parties do not intend to hinder, delay, or defraud any entity to which McCollum was or became indebted to on or after the date of any transfer contemplated in this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

      e.     If McCollum's obligations under this Stipulation are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, McCollum or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of McCollum's debts, or to adjudicate McCollum as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for McCollum or for all or any substantial part of McCollum's assets:

      (i) the United States may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against McCollum for the claims that would otherwise be covered by the releases provided in Paragraphs 6 and 7 above; and

      (ii) the United States has an undisputed, non-contingent, and liquidated allowed claim against McCollum in the amount of $140,294,162 less any payments received pursuant to this Stipulation, provided, however, that such payments are not otherwise avoided and recovered from the United States by McCollum, a receiver, trustee, custodian, or other similar official for McCollum.

f.    McCollum agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 21(e) is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power.  McCollum shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1).  McCollum waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to McCollum that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on May 31, 2019.

22.    Except as provided in Paragraphs 3, 5, 10, and 19 above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

23.    Each Party and signatory to this Stipulation represents that it freely and voluntarily enters into this Stipulation without any degree of duress or compulsion.

24.    This Stipulation is governed by the laws of the United States.  The exclusive venue for any dispute relating to this Stipulation is the United States District Court for the District of South Carolina.  For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25.    This Stipulation constitutes the complete agreement between the Parties.  This Stipulation may not be amended except by written consent of the Parties.  Forbearance by the

21

United States from pursuing any remedy or relief available to it under this Stipulation shall not constitute a waiver of rights under this Stipulation.

26.    The undersigned counsel represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

27.    This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation.

28.    This Stipulation is binding on McCollum's successors, transferees, heirs, and assigns.

29.    This Stipulation is binding on Relators' successors, transferees, heirs, and assigns.

30.    All Parties consent to the United States' disclosure of this Stipulation, and information about this Stipulation, to the public.

31.    This Stipulation is effective on the date upon which the Stipulation is approved by the Court (Effective Date).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

[SIGNATURE PAGES FOLLOW]

**THE UNITED STATES OF AMERICA**

DATED: 10/29/21      BY: _Yolen Y. Campbell_
                         YOLONDA Y. CAMPBELL
                         MICHAEL KASS
                         CHRISTOPHER TERRANOVA
                         Trial Attorneys
                         Commercial Litigation Branch
                         Civil Division
                         United States Department of Justice


DATED: _____    BY: _____
                         BETH C. WARREN
                         Assistant United States Attorney
                         United States Attorney's Office
                         District of South Carolina


DATED: _____    BY: _____
                         LISA M. RE
                         Assistant Inspector General for Legal Affairs
                         Office of Counsel to the Inspector General
                         Office of Inspector General
                         United States Department of Health and Human Services


DATED: _____    BY: _____
                         SALVATORE M. MAIDA
                         General Counsel
                         Defense Health Agency
                         United States Department of Defense

## THE UNITED STATES OF AMERICA

DATED: _____        BY: _____
                               YOLONDA Y. CAMPBELL
                               MICHAEL KASS
                               CHRISTOPHER TERRANOVA
                               Trial Attorneys
                               Commercial Litigation Branch
                               Civil Division
                               United States Department of Justice


DATED: 10/29/2021        BY: *Beth C. Warren*
                               BETH C. WARREN
                               Assistant United States Attorney
                               United States Attorney's Office
                               District of South Carolina


DATED: _____        BY: _____
                               LISA M. RE
                               Assistant Inspector General for Legal Affairs
                               Office of Counsel to the Inspector General
                               Office of Inspector General
                               United States Department of Health and Human Services


DATED: _____        BY: _____
                               SALVATORE M. MAIDA
                               General Counsel
                               Defense Health Agency
                               United States Department of Defense


23

## THE UNITED STATES OF AMERICA

DATED: _____     BY: _____

                                YOLONDA Y. CAMPBELL
                                MICHAEL KASS
                                CHRISTOPHER TERRANOVA
                                Trial Attorneys
                                Commercial Litigation Branch
                                Civil Division
                                United States Department of Justice


DATED: _____     BY: _____

                                BETH C. WARREN
                                Assistant United States Attorney
                                United States Attorney's Office
                                District of South Carolina


DATED: _10/29/2021_     BY: _____

                                LISA M. RE
                                Assistant Inspector General for Legal Affairs
                                Office of Counsel to the Inspector General
                                Office of Inspector General
                                United States Department of Health and Human Services


DATED: _10/26/2021_     BY: BLEY.PAUL.NICHOL   Digitally signed by
                            AS.1099873821       BLEY.PAUL.NICHOLAS.1099873821
                                                Date: 2021.10.26 11:45:48 -04'00'

                        for SALVATORE M. MAIDA
                            General Counsel
                            Defense Health Agency
                            United States Department of Defense

**DANIEL A. MCCOLLUM**

DATED: 10/26/21 BY: _____
DANIEL A. MCCOLLUM

DATED: October 26, 2021 BY: _____
IAN T. DUGGAN
Counsel for Daniel A. McCollum

**<u>RELATORS</u>**

DATED: <u>10/26/2021</u>          BY:    *Donna Rauch*
                                       _____
                                       DONNA RAUCH


DATED: _____          BY:    _____
                                       MURIEL CALHOUN


DATED: _____          BY:    _____
                                       BRANDY KNIGHT


DATED: _____          BY:    _____
                                       DAVID E. ROTHSTEIN
                                       Counsel for Donna Rauch, Muriel Calhoun, and
                                       Brandy Knight


DATED: _____          BY:    _____
                                       ROBERT MATHEWSON


DATED: _____          BY:    _____
                                       CORY FEIN
                                       Counsel for Robert Mathewson

**RELATORS**

DATED: _____    BY: _____
                          DONNA RAUCH

DATED: 10/26/2021    BY: _____
                          MURIEL CALHOUN

DATED: _____    BY: _____
                          BRANDY KNIGHT

DATED: _____    BY: _____
                          DAVID E. ROTHSTEIN
                          Counsel for Donna Rauch, Muriel Calhoun, and
                          Brandy Knight

DATED: _____    BY: _____
                          ROBERT MATHEWSON

DATED: _____    BY: _____
                          CORY FEIN
                          Counsel for Robert Mathewson

**RELATORS**

DATED: _____    BY: _____
                          DONNA RAUCH


DATED: _____    BY: _____
                          MURIEL CALHOUN


DATED: 10/25/21      BY: _____Brandy M. Knight_____
                          BRANDY KNIGHT


DATED: _____    BY: _____
                          DAVID E. ROTHSTEIN
                          Counsel for Donna Rauch, Muriel Calhoun, and
                          Brandy Knight


DATED: _____    BY: _____
                          ROBERT MATHEWSON


DATED: _____    BY: _____
                          CORY FEIN
                          Counsel for Robert Mathewson

**<u>RELATORS</u>**

DATED: _____          BY: _____
                               DONNA RAUCH


DATED: _____          BY: _____
                               MURIEL CALHOUN


DATED: _____          BY: _____
                               BRANDY KNIGHT


DATED: _10/26/2021_        BY: _____ for
                               DAVID E. ROTHSTEIN
                               Counsel for Donna Rauch, Muriel Calhoun, and
                               Brandy Knight


DATED: _____          BY: _____
                               ROBERT MATHEWSON


DATED: _____          BY: _____
                               CORY FEIN
                               Counsel for Robert Mathewson

**RELATORS**

DATED: _____    BY: _____
                         DONNA RAUCH

DATED: _____    BY: _____
                         MURIEL CALHOUN

DATED: _____    BY: _____
                         BRANDY KNIGHT

DATED: _____    BY: _____
                         DAVID E. ROTHSTEIN
                         Counsel for Donna Rauch, Muriel Calhoun, and
                         Brandy Knight

DATED: 10/25, 2001    BY: _____
                         ROBERT MATHEWSON

DATED: Oct 25, 2021    BY: _____
                         CORY FEIN
                         Counsel for Robert Mathewson

25

**IT IS SO ORDERED**, this ___8th___ day of ___November___, 2021.

Joseph Dawson, III
United States District Judge

## EXHIBIT A

| Payment Due Date | Payment Due | 1.5% Interest | Principal | Balance |
|---|---|---|---|---|
|  |  |  |  | $85,000.00 |
| Within 70 calendar days of the Effective Date | $20,244.52 | $244.52 | $20,000.00 | $65,000.00 |
| Within 130 calendar days of the Effective Date | $20,347.26 | $347.26 | $20,000.00 | $45,000.00 |
| Within 190 calendar days of the Effective Date | $20,351.37 | $351.37 | $20,000.00 | $25,000.00 |
| Within 250 calendar days of the Effective Date | $20,256.85 | $256.85 | $20,000.00 | $5,000.00 |
| Within 310 calendar days of the Effective Date | $5,063.70 | $63.70 | $5,000.00 | -- |
| **Total** | **$86,263.70** | **$1,263.70** | **$85,000.00** |  |

## EXHIBIT B
### ANNUAL REPORT ON TOTAL ANNUAL EARNINGS
#### *Time Period of Report: From _____ to _____*
##### *(List Start and End Dates of Annual Contingency Period)*

Report – Paragraph 3(c)(1)

For each payment, earnings, bonus, commission, raise, distribution, gift, return of capital, tax refund, sales proceeds, reimbursement, refund, loan proceeds, insurance payment, damages, penalties, gambling or lottery winnings, restitution, capital gains, transfer, or other form of remuneration that McCollum received that year from any person, company (including but not limited to Carolina Spine and Pain Centers, Inc. or any affiliate or successor), investment, litigation, claim, or other source (collectively, "Remuneration") for the Time Period of this Report, list the date on which McCollum received the Remuneration, and the type, source, and fair market value of the Remuneration.

| Date | Type | Source | Fair Market Value |
|------|------|--------|-------------------|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| **(Continue on Separate Sheet if Necessary)** |  |  |  |

Report – Paragraph 3(c)(2)

List McCollum's salary for the Time Period of this Report from Carolina Spine and Pain Centers, Inc. (CSPC). If McCollum received no salary from CSPC for this Time Period, list $0.

|  | **Amount Received** |
|--|---------------------|
| McCollum's Salary for the Time Period of this Report from Carolina Spine and Pain Centers, Inc. |  |

Report – Paragraph 3(c)(3)

List the amounts of each of the Total Annual Earnings categories below and calculate the corresponding and total contingency payments to the United States pursuant to Paragraph 3(c) of the Agreement.

| Annual Earnings Categories | Amount | Contingency % | Contingency Amt. |
|----------------------------|--------|---------------|------------------|
| Total Annual Earnings (TAE) |  | -- | -- |
| TAE between $200,000 and $350,000 |  | 15% |  |
| TAE between $350,000 and $500,000 |  | 30% |  |
| TAE in excess of $500,000 |  | 50% |  |
| **Total Paragraph 3(c) Contingency Payment Due to the United States:** |  |  |  |

       **I hereby certify, under the penalty of perjury, and subject to 18 U.S.C. § 1001, that the foregoing Report is truthful, accurate, and complete.**

**Signature** _____

**Name (Print)** _____

**Date** _____